81 P.3d 1230

STATE of Idaho, Plaintiff–Appellant,

v.

Craig T. PERRY, Defendant–Respondent.

No. 29718.

Supreme Court of Idaho,
Boise, September 2003 Term.

Nov. 5, 2003.

that the testimony would be admissible so long as Perry took the stand. This Court reverses the decision of the district court.

## FACTS AND PROCEDURAL BACKGROUND

Craig Perry was charged with second-degree murder of his uncle. Perry retained Dr. Charles Honts to administer a polygraph test. During the polygraph examination, Perry denied shooting the victim or arranging for his death, and testified that, as far as Perry knew, the victim shot himself. Dr. Honts rendered an opinion that Perry was truthful when making these statements.

Perry filed a motion in limine seeking to allow the testimony of Dr. Honts. Perry claims that the expert's testimony is not being presented to prove the truth of the matter asserted, but to prove the truth of the involuntary physical responses. The State asserts that the expert's testimony will improperly vouch for the credibility of the witness and the testimony is inadmissible hearsay.

Following an extensive *Daubert* hearing, the district court found that the testimony of the expert witness would be admissible. However, the district court conditioned the admission of the results of the examination on Perry testifying in his own defense. A copy of the video of the test and the data supporting Dr. Honts' opinion was given to the State. The State moved for leave to file an interlocutory appeal, which the district court granted.

The issue presented in this appeal is whether the district court erred in concluding that the testimony regarding the results of defendant's polygraph examination is admissible evidence.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Siebe Law Office, Moscow, for respondent. James E. Siebe argued.

BURDICK, Justice.

This case comes before the Court on an interlocutory appeal following the district court's grant of Craig Perry's motion in limine. The motion sought to allow expert witness testimony concerning the results of his polygraph test. The district court found

## STANDARD OF REVIEW

The district court has broad discretion in the admission and exclusion of evidence, and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion. *State v. Howard,* 135 Idaho 727, 731, 24 P.3d 44, 48 (2001). "The district court's determination that a witness is qualified as an expert is

discretionary." *West v. Sonke,* 132 Idaho 133, 138, 968 P.2d 228, 233 (1998) (citations omitted).

■ When an exercise of discretion is reviewed on appeal, the Court inquires: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by exercise of reason. *Swallow v. Emergency Medicine of Idaho, P.A.* 138 Idaho 589, 592, 67 P.3d 68, 71 (2003) (citing *State v. Merwin,* 131 Idaho 642, 962 P.2d 1026 (1998); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

## DISCUSSION

The State contends that Dr. Honts' testimony should not be admitted because it would improperly vouch for the credibility of Perry. The State argues that this vouching usurps the jury's fact finding and its role in assessing the credibility of the witnesses. The State further asserts that Perry did not establish the scientific reliability of Dr. Honts' testimony under I.R.E. 702 and that Dr. Honts' testimony is inadmissible hearsay and should not be allowed under I.R.E. 801.

Perry contends that Dr. Honts' testimony meets the test prescribed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Perry argues that the record shows that the scientific community generally accepts polygraph testing and the reliability of polygraph testing. Perry contends that Dr. Honts' testimony does not usurp the fact-finding role of the jury. Further, Perry argues that there are numerous circumstances where experts opine on issues to be decided by the trier of fact and that judges are empowered to sort out spurious attempts to mislead juries.

In addition, Perry argues that the polygraph test results are not hearsay because the results are not being offered to prove that he did not shoot his uncle because he said he did not, but rather are being offered to prove that his body's physiological response indicates that he is telling the truth when making that statement (i.e., to prove the truth by involuntary physical response). By requiring Perry to take the stand prior to the results being allowed, Perry asserts that the State will have a full opportunity to cross-examine him concerning the reactions recorded at the time of the test.

The district court has broad discretion in the admission and exclusion of evidence and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion. *State v. Howard,* 135 Idaho 727, 731, 24 P.3d 44, 48 (2001). It is clear that the district court perceived the issue as one of discretion. The second prong of the abuse of discretion test requires this Court to determine whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices.

Idaho Rule of Evidence 702 provides in regard to expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The parties do not object that Dr. Honts is a qualified expert in the field of polygraph testing.

■ The inquiry under I.R.E. 702 is whether the expert will testify to scientific knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue, "not whether the information upon which the expert's opinion is based is commonly agreed upon." *State v. Merwin,* 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. at 2796, 125 L.Ed.2d at 482. This Court in *State v. Trevino,* 132 Idaho 888, 893–94, 980 P.2d 552, 557–58 (1999), held with regard to scientific evidence:

In *Daubert,* the Supreme Court held that the "general acceptance in the scientific community" standard for determining the admissibility of scientific evidence had been replaced by the Federal Rules of Evidence, in particular F.R.E. 702. The *Daubert* court held that pursuant to Rule 702, the trial judge is assigned the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Daubert,* at 598–99, 113 S.Ct. at 2799, 125 L.Ed.2d at 485–86. In other words, for scientific evidence to be admitted, *it must be supported by appropriate validation, establishing a standard of evidentiary reliability, and must assist the trier of fact to understand the evidence or to determine a fact in issue. Id.* at 590–91, 113 S.Ct. at 2795, 125 L.Ed.2d at 480–81. The decision to admit or deny the evidence, therefore, is within the discretion of the trial judge in individual jurisdictions which may reasonably reach differing conclusions as to whether polygraph evidence should be admitted. *See United States v. Scheffer,* 523 U.S. 303, 310, 118 S.Ct. 1261, 1265, 140 L.Ed.2d 413, 419 (1998).

*Id.* (emphasis added).

This Court has previously held that:

As a general rule, results of polygraph examinations are inadmissible absent a stipulation by both parties. Where stipulated polygraph results may be admitted, the defendant's participation in the examination must be free and voluntary. The trial court has discretion to exclude evidence if it finds that an examiner was not qualified or that the conditions under which the test was administered were unfair. The opposing party must be permitted to cross-examine the examiner as to his or her expertise, the reliability of polygraph examinations, the accuracy of the apparatus used, and all other points reflecting on the accuracy of the polygraph both in general, and in the particular case. Also, the jury must be instructed that the examiner's testimony as to the results of the test is not conclusive, but is to be taken only as an expert opinion....

Moreover, the courts of many other states have held that results of polygraph examinations are not admissible in a criminal trial, regardless of whether the polygraph testimony is exculpatory....

The foregoing authorities reflect the prevailing judicial view that the physiological and psychological bases for the polygraph examination have not been sufficiently established to assure the validity or reliability of test results. While scientific developments may one day refine the polygraph examination so that the results of the test may more frequently merit admission into evidence, we will not now overturn the trial court's exclusion of such results absent a stipulation by both parties.

*State v. Fain,* 116 Idaho 82, 86–87, 774 P.2d 252, 256–57 (1989) (citations omitted).

A defendant's Sixth Amendment right to present evidence is fundamental; however, this right is subject to reasonable limitations. *U.S. v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413, 418 (1998); *see also Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973). The exclusion of evidence does not impair the defendant's right "to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they serve.' " *Scheffer,* 523 U.S. at 308, 118 S.Ct. at 1264, 140 L.Ed.2d at 418 (quoting *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37, 48 (1987)). The exclusion is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* With the exercise of the defendant's right to present evidence, the rules of procedure and evidence must be complied with to assure both fairness and reliability in the ascertainment of guilt or innocence. *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 312.

The United States Supreme Court upheld the *per se* exclusion of polygraph results in military trials in *U.S. v. Scheffer.* 523 U.S. at 316–17, 118 S.Ct. at 1268–69, 140 L.Ed.2d at 423. The Court held that exclusion of the expert testimony regarding the polygraph results did not abridge the defendant's right to present a defense because it did not impli-

524

cate any significant interest of the accused. *Id.* The Court noted that the fact-finders were able to hear all of the relevant details of the charges from the perspective of the accused and did not preclude the accused from introducing any factual evidence; the exclusion merely barred the introduction of expert opinion testimony that bolstered the accused's credibility. *Id.* at 316–17, 118 S.Ct. at 1268–69, 140 L.Ed.2d at 423.

In this case, the district court initially stated the first issue to be considered "is the fundamental right of an accused to present a defense. And I think that if there is—if it's a fairly close question I think the Constitution requires that he—that an accused to be entitled to use it. The question is, is it close." Later the district court stated "what I have to look at is, I think, based on *Daubert* and—and *Konechny* [134 Idaho 410, 419, 3 P.3d 535, 544 (Ct.App.2000)] is, you know, what is the state of the science." Finally, the district court stated "the ultimate question that I have to decide is will it assist the jury in deciding what weight to give the evidence and—and that's permissible if it meets the scientific standards."

In its opinion, the district court discussed the list of factors in *Daubert,* which include "whether the theory or technique in question can be tested, whether it has been subjected to peer review and publication, its known or potential error rate, the existence and maintenance of standards governing its use, and whether it has attracted widespread acceptance within its relevant community." *State v. Parkinson,* 128 Idaho 29, 34, 909 P.2d 647, 654 (Ct.App.1996) (citing *Daubert,* 509 U.S. at 592–95, 113 S.Ct. at 2795–97, 125 L.Ed.2d at 482–84).

The district court found that whether Perry's constitutional right to present a defense was violated was a "close call" but that it would be infringed upon if the polygraph results were not admitted. In discussing the reliability of the polygraph test, the district court noted that it had relied upon a National Academy of Sciences' article that essentially reported "when we're dealing about a specific instance as to whether or not the lie detector test is reliable, that it is significantly greater than chance and significantly less than con-

clusive." The district court found that it would give diminished weight to the conclusions of Dr. Iacono, another expert in the area of polygraph testing, because much of his scientific data had not been subjected to peer review. The district court then stated that another significant factor in finding reliability is "there are validity tests that have been done both by lab and on the field. Those have been peer reviewed with statistical analysis with peer review and publication in high quality journals with 80 percent. . . ." The district court also noted with regard to the validity testing of polygraphs that "the rate of error is based upon—based on Dr. Honts' testimony is 5 percent." Further, the district court found that "[t]he surveys indicate to me a general scientific acceptance." The district court determined it would allow Dr. Honts' testimony on the polygraph results. However, the district court conditioned the admission on Perry taking the stand and required a copy of the video of the test and data results be provided to the State by the following day.

The National Academy of Sciences' article relied upon by the district court only shows the reliability of polygraph tests as significantly greater than chance but significantly less than conclusive. This does not appear to support a conclusion of reliability; rather, it shows that the test *might be* reliable. As to the surveys showing a general scientific acceptance, the record reflects that other scientific surveys demonstrate reliability rates anywhere from 47 to 95 percent. With such a great variance, it is hard to discern whether the scientific community accepts the polygraph test or not. While these articles and surveys were used to support the district court's decision, they also tend to cast doubt on whether the reliability of the polygraph tests has been refined to the point "that the results of the test may more frequently merit admission into evidence." *Fain,* 116 Idaho at 87, 774 P.2d at 257. Even if there is sufficient evidence to find that the polygraph testing is supported by appropriate validation in this case, there was no showing by the district court of how this polygraph opinion would assist the trier of

fact to understand evidence or determine a fact in issue.

Perry asserts that the polygraph results will be offered at trial to prove only the truth of his statements by his body's involuntary physiological responses. Although jurors will need to determine whether they believe Perry's testimony as to the details of the death of his uncle, Perry's physiological responses to a polygraph test are not facts at issue. Further, the responses will not assist the trier of fact in understanding the evidence; rather, the evidence of the responses merely would re-present testimony presumably already testified to by Perry and attempt to bolster his credibility.

"In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *U.S. v. Charley*, 189 F.3d 1251, 1267 (10th Cir.1999); *see also Washington v. Schriver*, 240 F.3d 101, 113 (2d Cir.2001); *Goodwin v. MTD Products Inc.*, 232 F.3d 600, 609 (7th Cir.2000).

Idaho courts have routinely held that "an expert's opinion, in a proper case, is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function." *State v. Hester*, 114 Idaho 688, 696, 760 P.2d 27, 35 (1988); *see also State v. Konechny*, 134 Idaho 410, 419, 3 P.3d 535, 544 (Ct.App.2000). "It is the jury's function to assess the demeanor of the witnesses and make a determination of credibility. .... This Court will not second-guess the jury's determination on credibility or the weight to be given to witnesses' testimony." *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996). "[S]tatements by a witness as to whether another witness is telling the truth are prohibited." *State v. Allen*, 123 Idaho 880, 885, 853 P.2d 625, 630 (Ct.App. 1993).

In this case, the results of the polygraph are useful to bolster Perry's credibility but do not provide the trier of fact with any additional information that pertains to Perry's case. The fact of whether the alleged act occurred is for the jury to decide. *Charley*, 189 F.3d at 1270. Additionally, credibility questions are left to the trier of fact, in this case a jury. *See Goodwin*, 232 F.3d at 609. The polygraph results in this case do not help the trier of fact to find facts or to understand the evidence as required by I.R.E. 702. To admit these results is an attempt to substitute the credibility determination appropriate for the jury, with Dr. Honts' interpretation of the alleged involuntary physiological results from the polygraph examination. Dr. Honts usurps the role of the jury as the ultimate finder of credibility.

Therefore, this Court holds Dr. Honts' testimony as well as the polygraph results, inadmissible and reverses the decision of the district court. Perry's constitutional right to present a defense will not be infringed upon by this Court's holding. Perry will be able to present all of the relevant details of the charge from his perspective and will not be precluded from introducing factual evidence; the exclusion merely bars the introduction of expert opinion testimony that would bolster Perry's credibility. *Scheffer*, 523 U.S. at 316–17, 118 S.Ct. at 1268–69, 140 L.Ed.2d at 413; *State v. Hester*, 114 Idaho 688, 696, 760 P.2d 27, 35 (1988); *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996); *State v. Konechny*, 134 Idaho 410, 419, 3 P.3d 535, 544 (Ct.App.2000).

In ruling that polygraph evidence is inadmissible to vouch for the credibility of a witness at trial, this Court notes that polygraph evidence may be admissible in instances where the parties stipulate to the admission of the evidence, *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), in probation revocation hearings, *State v. Travis*, 125 Idaho 1, 867 P.2d 234 (1994), and in other informal hearings where the rules of evidence do not apply, *In re X*, 110 Idaho 44, 47–48, 714 P.2d 13, 16–17 (1986), at the discretion of the trial court or presiding official. This opinion does not touch on the efficacy of the polygraph tests in other contexts or uses, except as to jury and court trials conducted in this State.

**526**

Given the above holding, the remaining issue regarding I.R.E. 801 raised by the State need not be addressed.

## CONCLUSION

This Court holds that Dr. Honts' testimony regarding Perry's polygraph results is inadmissible because it does not assist the trier of fact to understand the evidence or to determine a fact in issue. It is also inadmissible as it violates the province of the fact-finder to assess the credibility of the witnesses in a state court proceeding. The ruling on the motion in limine by the district court is reversed.

Justices SCHROEDER, KIDWELL, EISMANN and Justice Pro Tem WALTERS concur.