121 P.3d 965

**Robert BAGSHAW, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 30008.**

Court of Appeals of Idaho.

Jan. 13, 2005.

Review Denied Oct. 20, 2005.

---

Nevin, Benjamin & McKay, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph Reed Blount, Deputy Attorney General, Boise, for respondent. Ralph Reed Blount argued.

GUTIERREZ, Judge.

Robert Bagshaw appeals from the order of the district court summarily dismissing his petition for post-conviction relief. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts and proceedings of the underlying criminal case are as set forth in an unpublished opinion, *State v. Bagshaw,* Docket No. 26952, 137 Idaho 212, 46 P.3d 29, 2001 WL 1868964 (Ct.App. Nov.30, 2001):

Bagshaw and his victim, Robyn Knight, met late in the summer of 1998 and began a sporadic yearlong romantic relationship. On August 14, 1999, shortly after Knight broke off the relationship and began dating another man, Bagshaw convinced Knight to meet him at a Texaco station in Boise at approximately 9:00 p.m. Knight got into Bagshaw's car and a heated argument ensued. Bagshaw drove the car to an isolated location in the Boise foothills and, after threatening to kill Knight and "bury her in a shallow grave," forcibly raped her. Afterwards, Bagshaw drove Knight back to her car and let her go. Knight contacted her mother, who lived in Grandview, and arranged to meet her in Mountain Home.

When Knight arrived in Mountain Home she was stopped for speeding by Idaho State Police Officer Jeffrey Cappel. Cappel testified that Knight appeared to be very emotional and upset. Knight told Cappel that her boyfriend had beaten and threatened to kill her. Cappel advised Knight to contact the local authorities and let her leave without issuing a citation. Knight proceeded to her grandmother's home where she told her mother and grandmother that Bagshaw had raped her. Knight's mother immediately took Knight to the hospital in Mountain Home where an emergency room physician performed a rape kit examination on her. The results of the exam indicated sexual intercourse sometime in the previous twenty-four hours.

Several days later, Knight spoke with Ada County Sheriff's Detective Ken Smith. With Detective Smith's assistance, Knight made a recorded "confront" call to Bagshaw. During the course of the conversation, Bagshaw acknowledged threatening and raping Knight. Two pertinent exchanges were as follows:

KNIGHT: How can you expect me to be with you after you raped me Rob? How can you expect me to do that? And after you threaten me and after you hit me in the face.

BAGSHAW: Dude, you're lucky that I just didn't kill you. For real kill you. I couldn't believe you did that to me.

. . . .

KNIGHT: Why did you do to me what you did to me?

BAGSHAW: Because you hurt me and I wanted to hurt you back.

KNIGHT: Well, huh, so.

BAGSHAW: You've hurt before too, Robyn and I just

. . . .

KNIGHT: So, you raped me just to hurt me?

BAGSHAW: Yeah.

During the confront call Bagshaw threatened to tell the police that Knight had been involved in two robberies with him. Regarding the first robbery, Knight allegedly drove Bagshaw to a drug dealer's home where instead of purchasing marijuana Bagshaw robbed the drug dealer, who was connected to the Brothers Speed motorcycle gang. Bagshaw told Knight that the gang was looking for her and that she would have no protection unless she resumed their relationship. Regarding the second robbery,[1] Bagshaw threatened to tell the police, and to have another person involved in the robbery tell the police, that Knight was his get-away driver. Defense counsel raised a motion *in limine* to exclude the portions of the confront call[2] referencing the robberies in order to avoid bringing in evidence that his client was involved in two drug-related armed robberies unrelated to the case at issue. The motion was granted. The jury heard only the portion of this recorded call relevant to the rape. Bagshaw's threats to Knight were omitted.

At trial, Bagshaw testified on his own behalf, asserting that the sexual intercourse occurring that evening between Bagshaw and Knight was consensual. The jury found Bagshaw guilty of rape but not guilty of kidnapping. Bagshaw was sentenced to a term of life imprisonment with twenty-seven years determinate. Bagshaw appealed his conviction and sentence, which this Court affirmed

in an unpublished opinion, *See Bagshaw,* Docket No. 26952.

Bagshaw subsequently petitioned the district court for post-conviction relief, alleging in part that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to question Bagshaw about Knight's alleged involvement in the unrelated robberies. Bagshaw also asserted that trial counsel rendered ineffective assistance by failing to interview and call impeachment witnesses regarding the victim's reputation for truthfulness. The state filed an answer and motion to dismiss. Following a hearing on the state's motion to dismiss, the district court granted the state's motion and summarily dismissed Bagshaw's petition. Bagshaw appeals.

## II.

## STANDARD OF REVIEW

A post-conviction relief action is a civil proceeding in which the applicant bears the burden to prove the allegations upon which the request for relief is based. *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990); *Pierce v. State,* 109 Idaho 1018, 1019, 712 P.2d 719, 720 (Ct.App.1985). An order for summary disposition of a post-conviction relief application under I.C. § 19–4906(c) is the procedural equivalent of summary judgment under Idaho Rule of Civil Procedure 56. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994). Therefore, summary dismissal of a post-conviction application is appropriate only if there exists no genuine issue of material fact which, if resolved in the applicant's favor, would entitle him to the requested relief. *Fairchild v. State,* 128 Idaho 311, 315, 912 P.2d 679, 683 (Ct.App.1996). If a genuine factual issue is presented, an evidentiary

---

1. Bagshaw and three accomplices broke into a home in an attempt to recover stolen drugs and to steal additional drugs. The four men were armed and threatened the family inside the home. However, they discovered that the family they were terrorizing was the wrong family, and they were in the wrong house. Before leaving, the men took compact disks and two telephones. Bagshaw was convicted of robbery, second degree kidnapping, and burglary for this armed invasion of a home *subsequent* to the trial at

issue in the instant appeal. *See State v. Bagshaw,* 137 Idaho 613, 51 P.3d 427 (Ct.App.2002) (affirming judgment of conviction and sentence).

2. At trial, Bagshaw admitted on cross-examination to being present in the courtroom when the confront call was edited, and to agreeing that the omitted parts of the call regarding the robberies were irrelevant and that it was proper to omit them.

hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988). On review of a summary dismissal, we must examine the record to determine whether the trial court correctly found that there existed no genuine issue of material fact and that the state was entitled to judgment as a matter of law. *Id.* In making this assessment, we do not give evidentiary value to mere conclusory allegations that are unsupported by admissible evidence. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986); *Dunlap v. State*, 126 Idaho 901, 904, 894 P.2d 134, 137 (Ct.App.1995); *Drapeau v. State*, 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct.App.1982). *See also State v. Ayala*, 129 Idaho 911, 915, 935 P.2d 174, 178 (Ct.App.1996).

## III.

### ANALYSIS

Bagshaw contends on appeal that the district court erred in granting summary dismissal of his petition for post-conviction relief because he raised a genuine issue of material fact regarding the ineffective assistance of his trial counsel. Specifically, Bagshaw argues that performance by his trial counsel was ineffective with respect to trial counsel's failure to question Bagshaw regarding Knight's alleged involvement in a separate crime in which he was also involved, and for failing to call impeachment witnesses to testify as to Knight's general reputation for truthfulness.

In order to prevail on an ineffective assistance of counsel claim, an applicant must demonstrate both that his attorney's performance was deficient, and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App. 1989). To show deficient performance, a defendant must overcome the strong presump-

tion that counsel's performance was adequate by demonstrating "that counsel's representation did not meet objective standards of competence." *Roman*, 125 Idaho at 648–49, 873 P.2d at 902–03. Strategic or tactical decisions will not be found to be deficient performance "unless those decisions are made upon a basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *Davis*, 116 Idaho at 406, 775 P.2d at 1248. If a defendant succeeds in establishing that counsel's performance was deficient, he must also prove the prejudice element by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Roman*, 125 Idaho at 649, 873 P.2d at 903.

■ Bagshaw argues that trial counsel violated his Sixth Amendment right to *fully* testify on his own behalf by not questioning him about his victim's alleged criminal involvement in the robbery of the Brothers Speed motorcycle gang. According to Bagshaw, this prevented him from exercising his right to personally make his defense. Bagshaw cites *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in support of his proposition. *Faretta*, however, dealt with a defendant's right to self-representation and the United States Supreme Court's determination that under the Sixth Amendment a state may not require that a defendant accept a state-appointed public defender against his will. *Id.* at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. *Faretta* further recognized that where a defendant accepts counsel as his representative at the outset, as is the case here, law and tradition may allocate to counsel the power to make binding decisions of trial strategy in many areas. *Id.* at 820, 95 S.Ct. at 2533–34, 45 L.Ed.2d at 573.

■ It is generally agreed that the decision of what evidence should be introduced at trial is considered strategic or tactical. AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE 4–5.2.[3] Case law address-

---

**3.** Standard 4–5.2(a)–(b) of the AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE (1991) states:

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and oth-

ing Sixth Amendment rights, including a defendant's right to testify and the right to present a defense, has stated on numerous occasions that such rights are not absolute. A defendant has no right to present irrelevant testimony or frivolous issues. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987, 993 (1983) (noting that counsel's professional evaluation would be undermined by any rule allowing defendant to decide which issues are asserted); *United States v. Torres,* 937 F.2d 1469, 1473 (9th Cir.1991). The right of a defendant to present relevant testimony may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1056–46, 35 L.Ed.2d 297, 308–09 (1973). Also, where counsel has a reasonable strategic purpose for advising a defendant not to testify, that advice does not fall below an objective standard of reasonableness and the defendant is not denied effective assistance of counsel. *See Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.1990) (finding that advice from counsel that defendant not testify, based on strategy of first trial which resulted in hung jury and where key prosecution witness was unavailable, was reasonable strategic decision and did not constitute deficient performance).

■ Likewise, Idaho case law has concluded that a defendant's Sixth Amendment right is subject to reasonable limitations. *See State v. Perry,* 139 Idaho 520, 81 P.3d 1230 (2003). The Idaho Supreme Court ruled in *Perry* that the exclusion of evidence does not impair the defendant's right to present a defense so long as such exclusion is not arbitrary or disproportionate to the purposes it serves. *Perry,* 139 Idaho at 523, 81 P.3d at 1233. In determining whether Sixth Amendment rights were violated by the exclusion of evidence, this court considers whether the evidence proffered is relevant and then asks whether other legitimate interests outweighed the defendant's interest in presenting the evidence. *State v. Peite,* 122 Idaho 809, 814–15, 839 P.2d 1223, 1228–29 (Ct.App.1992).

At trial, Bagshaw testified on his own behalf. Bagshaw's testimony included his rendition of the facts surrounding the kidnap and rape charges. In particular, Bagshaw testified regarding his previous relationship with Knight and the circumstances surrounding the incident. Bagshaw denied that he had raped Knight and attempted to explain the statements he made during the confront call, denying that they were an admission. Bagshaw contends that trial counsel should have questioned him regarding Knight's criminal involvement in the Brothers Speed robbery, as well. Bagshaw now claims such evidence was relevant to show a motive for Knight to falsely accuse Bagshaw of rape in order to engender sympathy from the police, avoid prosecution for the robbery and to decrease Brother Speed's interest in finding her by placing Bagshaw in prison. Because Bagshaw asked trial counsel to utilize such evidence in the criminal trial, trial counsel presented this issue to the district court. The district court agreed with counsel that the resulting prejudice would outweigh any probative value of the evidence because it would cause prejudice to Bagshaw in the eyes of the jury and also would have Fifth Amendment consequences for Bagshaw in any subsequent prosecution of these other crimes. We conclude that trial counsel in this case had a legitimate interest in excluding evidence that, while marginally relevant,

ers are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:
    (i) what pleas to enter;
    (ii) whether to accept a plea agreement;
    (iii) whether to waive jury trial;
    (iv) whether to testify in his or her own behalf; and
    (v) whether to appeal
    (b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.
    (c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship.

was highly prejudicial to Bagshaw. Had trial counsel questioned Bagshaw on his victim's alleged involvement in this other crime, he would have opened the door to cross-examination about Bagshaw's own involvement in that same crime, as well as to the other related robbery for which he was facing imminent trial.[4]

▪ Considering that a defendant's Sixth Amendment right to testify is not absolute, it follows that where a defendant testifies on his own behalf and also presents other evidence on his defense theory, the exclusion of defendant's testimony regarding a relevant but collateral issue by defendant's counsel, on the basis of sound and reasonable trial strategy, does not constitute a violation of his Sixth Amendment rights. Bagshaw has not, therefore, raised a genuine issue of material fact as to whether counsel's performance was deficient in not questioning him on the victim's alleged joint criminal involvement with Bagshaw in separate, unrelated robberies.

▪ Bagshaw also argues that the district court erred in summarily dismissing his petition for post-conviction relief with respect to his claim that counsel failed to interview and call witnesses who could testify to the victim's general reputation for truthfulness and honesty. Bagshaw claimed to have some general impeachment witnesses who were willing to testify, although Bagshaw did not provide an affidavit for each of these witnesses or evidence that he had given a list of witnesses to trial counsel. The district court assured Bagshaw that for purposes of the state's motion to dismiss, the district court would *assume* that he could provide such affidavits. This court does not encourage or condone such a procedure. Under the UPC-PA, the burden of coming forward with such affidavits clearly rests with the petitioner. *See* I.C. § 19–4903 and 19–4906.

▪ Assuming Bagshaw could have presented testimony pertaining to the victim's bad reputation for truth and honesty, he has failed to show how he was prejudiced by his counsel's failure to call such witnesses. At trial, the state presented convincing evidence of Bagshaw's guilt. Specifically, the jury heard Bagshaw's recorded admission to the rape and testimony from another witness that Bagshaw had admitted to raping the victim, a day after the rape occurred. Therefore, Bagshaw has not raised a genuine issue of material fact as to whether he was prejudiced by trial counsel's alleged failure to interview and call impeachment witnesses. Relief cannot be granted upon allegedly ineffective assistance of counsel where there is no evidence of prejudice resulting from the activity of counsel. *Cootz v. State*, 129 Idaho 360, 370, 924 P.2d 622, 632 (Ct.App.1996); *Drapeau*, 103 Idaho at 615, 651 P.2d at 549.

## IV.

### CONCLUSION

For the above stated reasons, we affirm the district court's order summarily dismissing Bagshaw's post-conviction relief petition. No costs are awarded to the state.

Judge LANSING and Judge Pro Tem SCHWARTZMAN concur.

---

4. The method that should be chosen by counsel for dealing with conflicts with his client regarding the client's testimony is not clear. The ABA offers some guidance through the ABA Standards for Criminal Justice and the ABA Model Rules of Professional Conduct. Under ABA Standard 4–5.2(c), counsel should make a record of the disagreement, the advice that was given and the reasoning for such advice, and the conclusion that was reached. Counsel should, at all times, maintain the confidence of the relationship. ABA Model Rules do not prescribe how such disagreements are to be resolved; rather, it is noted that other laws may be applicable and that counsel should seek a mutually acceptable resolution of the disagreement. *See* AMERICAN BAR ASSOCIATION MODEL RULE 1.2, Comment 2.