# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33527

STATE OF IDAHO,

   Plaintiff-Respondent,

v.

ERIC L. CHRISTIANSEN,

   Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

) **Lewiston, April 2007 Term**

) **2007 Opinion No. 71**

) **Filed: May 2, 2007**

) **Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County. The Hon. Carl B. Kerrick, District Judge.

The judgment of the district court is <u>affirmed</u>.

Blake & Cox, Lewiston, for appellant. Scott Chapman argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Courtney Beebe argued.

_____

EISMANN, Justice.

This is an appeal from a conviction for arson. The fire started in the defendant's leased business premises. The defendant seeks a new trial based upon misconduct by the prosecuting attorney in eliciting inadmissible evidence by seeking to lay the foundation for expert testimony by a police officer that in his opinion the defendant was deceptive during police interrogation and in eliciting testimony from the officer that the defendant refused to consent to a search of his business premises. We find the prosecutorial misconduct harmless beyond a reasonable doubt and affirm.

## I. FACTS AND PROCEDURAL HISTORY

At about 3:30 a.m. on November 20, 2001, the defendant Eric Christiansen reported a fire in commercial property he leased in Lewiston, Idaho. He operated a business known as Partyworks from the property. The fire investigators concluded that it was an arson fire, and on

September 20, 2002, Christiansen was indicted for four felonies: first degree arson of a structure, first degree arson of personal property, attempted first degree arson of a structure, and attempted first degree arson of personal property. Christiansen entered a plea of not guilty, and the charges were tried before a jury in July 2004. The jury found Christiansen guilty of all four counts, and the district court granted him a withheld judgment and placed him on probation.

Prior to sentencing, Christiansen moved for a judgment of acquittal or a new trial based upon trial testimony wrongfully elicited by the prosecuting attorney from Sergeant Clark of the Lewiston Police Department. Sergeant Clark testified that at about 11:15 a.m. on the morning of the fire he interviewed Christiansen at the police station. Christiansen was not in custody, but had come voluntarily to the station at Sergeant Clark's request. Sergeant Clark testified that Christiansen gave the following account of what had occurred. He had worked late that night and had left a candle burning on his desk when he left the business at about 12:45 a.m. and went home to bed. At about 3:30 a.m. he awakened and remembered the candle. He went to the business to check on it and discovered the fire, which he thought was probably started by the candle. The prosecuting attorney elicited testimony from Sergeant Clark that he did not believe Christiansen's story and had told him so.[1] The prosecutor then asked whether Sergeant Clark had asked Christiansen for permission to search the property. The officer answered that he had and that he had told Christiansen that the search could shed light on whether Christiansen had a financial motive to start the fire. The prosecutor then asked whether Christiansen had given consent to the search, and Sergeant Clark answered that he had not. Christiansen did not object to these questions. However, after the testimony had been given, he did move for a mistrial. The district court denied the motion because it did not believe that Christiansen would be deprived of a fair trial. It offered Christiansen an opportunity for a jury instruction on the issue, but Christiansen declined because he did not want to draw further attention to the issue.

---

[1] After giving a summary of Christiansen's account of what happened, including his theory that the candle may have accidentally started the fire, Sergeant Clark stated, "I didn't particularly think that this was the way things happened." The prosecuting attorney then elicited from Sergeant Clark that he took a break from interviewing Christiansen in order to discuss the matter with another officer. He testified that he told the other officer that he did not believe Christiansen's account and that he would attempt to obtain a statement as to what really happened. In response to questioning from the prosecuting attorney, Sergeant Clark then testified that he went back to speak with Christiansen and told him he did not believe Christiansen's story. The prosecutor's conduct in eliciting this testimony regarding whether Sergeant Clark believed Christiansen's account was clearly improper. Christiansen has not raised it on appeal, but if he had it would not have changed the result. It is simply another example of the prosecuting attorney's misconduct in this case.

2

The prosecuting attorney then elicited testimony from Sergeant Clark regarding his training to determine whether someone was being deceptive during an interview and the mannerisms he had been trained to observe as indicators of deception. The obvious purpose of the questioning was to lay a foundation for the officer's opinion that Christiansen was deceptive during the interview. When the prosecuting attorney asked Sergeant Clark what he had noticed about Christiansen's behavior during the interview, Christiansen objected. The district court sustained that objection.

The district court denied Christiansen's motion for a judgment of acquittal or a new trial. Christiansen appealed, and the appeal was initially heard by the Idaho Court of Appeals. It upheld Christiansen's conviction, and he requested review by this Court. In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Head v. State*, 137 Idaho 1, 43 P.3d 760 (2002).

## II. ANALYSIS

Christiansen contends that the district court erred in failing to grant his motion for a judgment of acquittal or a new trial. We will discuss each one separately.

**Motion for a judgment of acquittal.** Rule 29 of the Idaho Criminal Rules provides that a court can grant a motion for acquittal if the evidence is insufficient to sustain a conviction of the offenses. The district court found that the evidence in this case, although circumstantial, was sufficient to support the jury's verdict.

The evidence was uncontroverted that the fire was deliberately set. Three fire investigators examined the premises and came to the same conclusion. It was an arson fire. Christiansen stated that he had been working late cleaning and organizing. As a result, he had made a trail of cardboard boxes filled with papers and crumpled newspaper stretching from his office down a hallway past the back door and a bathroom to a storage room where he had left a five-gallon container of aviation gas. The vent on the gas container was open. The expert testimony showed that one fire started in papers on Christiansen's desk, but it self-extinguished and did not spread beyond the desk top. One or more other fires started in the boxes left in the hallway. There was no innocent cause for any of these fires. The investigators ruled out any possible causes other than arson.

Christiansen offered a hypothesis based upon the testimony of his mother. She recounted an incident that occurred approximately one year before the fire when she was burning a candle that was the same type left by Christiansen on his desk. It was a candle in a glass jar. She stated that after it had burned all the way down to the point that there was no wax remaining it suddenly flamed up very briefly. She described what occurred as follows:

> I had it [the candle] sitting on my stereo, and it was just almost gone. You know, it was just right at the bottom. And I got up to go into the kitchen, and all of a sudden, it made this really loud whish noise and flames went up the candle about this far up above the jar (indicating), but just for a blink of an eye. I mean, it was just a very short time. But it scared me. It sounded like a sparkler. And I have burnt several of those type of candles, and it's the only one that ever did it.

On cross-examination she testified that the candle had burned down to the small metal disc on the bottom of the candle and that the wax was gone. She also said that she had told Christiansen about what had happened. Although Christiansen's mother said that the candle sounded like a sparkler, she did not testify that it shot out any sparks. It only flamed up very briefly.

The fire investigators all testified that from their examination the candle left on Christiansen's desk did not start the fire. The physical evidence was simply not consistent with that possibility. The candle was offered into evidence during the trial. About one-half of the wax was remaining in the jar, and the jar was intact.

The evidence was uncontroverted and overwhelming that the fire was intentionally set. There was no evidence of any other possible causes for the fire. The only question was who set it. Christiansen stated that when he left the business at about 12:45 a.m., he went out through the back door, locking it. A security guard testified that at about 2:16 a.m. he checked the strip mall in which Christiansen's business was located. He checked all of the doors by trying to open them, and the back door of Christiansen's business was locked. According to Christiansen, when he arrived back at his store at around 3:30 a.m., the door was closed. He said that after walking up to the door, he realized there was a fire inside the building. He put his keys into the lock to unlock the door so he could go inside to grab a fire extinguisher. He then remembered what he had seen in movies when a door was opened to a room in which there was a fire. The flames shot out with explosive force when the door was opened. He decided not to open the door, but instead ran back to his vehicle and called the fire department on his cell phone. When the fire

department arrived, the back door was still locked, but it was slightly ajar. The draft of the fire had been going out the rear door. The smoke and heat damage around and above the door showed that there had been a lot of heat and soot coming out the door. The door had a tight seal, so the smoke and heat damage on the outside of the building could not have occurred unless the door was open while the fire was burning. There was no indication of any forced entry into the store, and none of the door keys were missing. Christiansen was the only person who had access to the store at the time the fire started.

There was also evidence that he had a financial motive to set the fire. The profit and loss statement for the period from January 1, 1997, through February 7, 2002, showed a net loss of $50,900.04. According to Christiansen's accountant, that net loss included a loss of about $48,000 during the business's first year. A commercial appraiser determined that the retail value of the store's inventory, based upon the price tags on the merchandise, totaled $57,158.35. A balance sheet dated December 31, 2001, listed the value of the inventory at $26,034.00, which would be its cost. The balance sheet also showed that Christiansen had invested $132,693.86 in the business, that he had taken $44,650.85 in draws, and that his total equity in the business was $5,109.24.

Prior to the fire, Christiansen had attempted to sell his business. He paid a company in Texas $3,000 for its services to find a buyer and signed a listing agreement to pay a commission if the company found a buyer. He admitted initially lying to the insurance company about whether he had paid any money to try and sell his business.

There was evidence that Christiansen was having difficulty paying business debts as they came due. The balance sheet showed four bank accounts available to the business, including a personal checking account. All four accounts had negative balances, which totaled $12,624.96. Documents recovered from the business after the fire showed that Christiansen was delinquent in various business debts, including $44.03 for a cell phone, $552.80 for yellow pages advertising, $1,096.19 to a supplier, $141.77 to the Internal Revenue Service, and $358.00 for the minimum payment on a business credit card.

In addition, Christiansen was delinquent in payments to his landlord, although he disputed the amount. According to his landlord, as of November 1, 2001, he owed $18,806.29 in rent, common area maintenance fees, and a power bill. Christiansen disputed the amount owed, but admitted that he was at least one or two months behind in payments to his landlord. The

5

amounts owing to the landlord were not reflected as liabilities in the balance sheet dated December 31, 2001. His accountant testified she had learned of that outstanding balance about a month before the fire. Christiansen had received a letter indicating that he had not paid that portion of the rent based upon a percentage of sales, a utility bill, and a rent increase. The accountant stated that the letter came as a shock to her. In addition, Christiansen had given the landlord a promissory note in the amount of $10,000 for money spent by the landlord in finishing the inside of the rental premises. That note was likewise not reflected in the balance sheet. Payments of $317.39 per month on that promissory note were to begin on April 1, 2002.

Effective September 23, 2001, Christiansen's business insurance policy had been cancelled for nonpayment of the premium. The amount of coverage was $47,000. About two weeks before the fire, Christiansen reinstated his insurance and, at the suggestion of his insurance agent, increased his coverage to $83,000.

In summary, the evidence at the trial was sufficient to sustain the jury's verdict. It was uncontroverted that the fire was intentionally set and that Christiansen was the only person who had access to the business at the time of the fire. The evidence also showed that the business was not paying bills as they came due and had recently been fully insured, giving Christiansen a motive to set the fire. The district court did not err in denying Christiansen's motion for a judgment of acquittal.

**Motion for a new trial.** "Idaho Code § 19-2406 sets forth the only bases for the grant of a new trial." *State v. Gomez*, 126 Idaho 83, 86, 878 P.2d 782, 785 (1994). Of those listed in the statute, the only one that could even arguably be applicable in this case is that "the court . . . has erred in the decision of any question of law arising during the course of the trial." I.C. § 19-2406(3). Christiansen argues that the district court made two errors that would be grounds for a new trial.

The first alleged error was failing to grant Christiansen's pretrial motion "[t]o require the state establish, outside the presence of the jury, adequate foundation for opinion/technical evidence pursuant to Rule 702 and 705 of the Idaho Rules of Evidence." The motion did not specify any particular anticipated expert testimony, but was a blanket motion applicable to all expert testimony. Christiansen wanted the foundation for any expert testimony to be established first outside the presence of the jury. If the court determined that the foundation was adequate and the opinion testimony admissible, the foundation testimony would be repeated with the jury

6

present. The district court denied the motion. Christiansen argues that had the court granted the motion, the jury would not have heard prejudicial testimony as the prosecuting attorney attempted to lay a foundation that Sergeant Clark was qualified to express an opinion as to Christiansen's veracity during police interrogation. The questioning was as follows:

> Q. (By Mr. Spickler) Sergeant Clark, when we left off, I had asked you if you could relate for the jury your training that you've received in methods of interviewing individuals.
>
> A. I've received, from the standpoint of hours, about 60 hours devoted just to interview and interrogation. Probably the best courses that I've had was called the Read technique. It's well known. A lot of private investigation firms and private individuals use this for their store security, as well as police officers.
>
> And essentially when we're interrogating someone, we attempt to read body language and, of course, put that in the context of what the question is, what the response is, and then what the body language is. So, we try to determine through all these factors whether a person is being deceptive or truthful.
>
> Q. What kind of –if I might, we've all heard about tells in poker, where somebody is trying to determine whether somebody is bluffing or not. What kind of tells would you be looking for in a normal interview?
>
> A. Well, if someone is telling the truth, they don't have to think about the answer. Typically, the person will lean forward, have an open position and answer—the interviewer will ask the question, and it will be—it's not difficult to tell the truth, so the answer will be spontaneous, because the truth just remains the same. Lies or untruths, sometimes we forget what we said a minute ago, so we have to think about things.
>
> Q. You said an open position?
>
> A. Well, leaning forward, palms up, making direct eye contact and giving a complete answer without a lot of stammering and stumbling.
>
> Q. What kind of things have you been trained to look for that indicate somebody is being deceptive?
>
> A. Well, and we have to be cautious here, because one thing, in and of itself, doesn't necessarily say anything; but several factors put together may be an indicator of deception. Hesitating when questioned, crossing arms, leaning back, looking away when giving an answer to a question, this kind of thing, rubbing lint away from the shoulders, rubbing your eyes, those kind of things strung together are an indicator of deception, is my training and my experience. I've used this for several years now, and it—it's accurate, I believe. I mean, I've conducted many, many interrogations using this technique.
>
> Q. And have you used this technique to come to opinions on whether the person you're talking to is being deceptive or not?
>
> A. Yes.
>
> Q. Referring to this specific interview that we've been discussing, can you tell the jury what kind of things you noticed about the behavior of the defendant?

At this point, Christiansen objected and the district court ultimately sustained the objection.

The questioning by the prosecuting attorney was clearly improper. Sergeant Clark's opinion testimony regarding Christiansen's veracity was clearly inadmissible. Over one-hundred years ago the Supreme Court of the Territory of Idaho held that a question calling "for the opinion of one witness as to the truthfulness of another . . . is clearly an invasion of the province of the jury, who are the judges of the credibility of witnesses." *People v. Barnes*, 2 Idaho 161, 163, 9 P. 532, 533 (1886). In *State v. Walters*, 120 Idaho 46, 55, 813 P.2d 857, 866 (1990), we stated, "Generally, expert testimony that purports to determine whether a particular witness is truthful on a particular occasion is not permitted because there is no reason to believe that experts are any more qualified to render such opinions than are jurors." In *State v. Raudebaugh*, 124 Idaho 758, 768, 864 P.2d 596, 606 (1993), we said, "Pursuant to [I.R.E. 608(a)], testimony by one witness that another witness was, or was not, telling the truth when they made a particular statement is not admissible evidence." Most recently, in *State v. Perry*, 139 Idaho 520, 81 P.3d 1230 (2003), we held that, absent a stipulation of both parties, opinion testimony regarding the results of the defendant's polygraph examination was inadmissible in his criminal trial because such testimony "usurps the role of the jury as the ultimate finder of credibility" and "[t]he polygraph results in this case do not help the trier of fact to find facts or to understand the evidence as required by I.R.E. 702." *Id*. at 525, 81 P.3d at 1235.

"Every person accused of crime in Idaho has the right to a fair and impartial trial," *State v. Sharp*, 101 Idaho 498, 494, 616 P.2d 1034, 1040 (1980), "whether guilty or innocent," *State v. Fowler*, 13 Idaho 317, 89 P. 757 (1907). We long ago held, "It is the duty of the prosecutor to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury." *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903). They should not "exert their skill and ingenuity to see how far they can trespass upon the verge of error, [because] generally in so doing they transgress upon the rights of the accused." *Id*. Prosecutorial misconduct includes asking questions where the answer is inadmissible, but the jury can infer what the answer would have been simply from the questioned asked. *Id*.

The State concedes that the prosecuting attorney's conduct was improper. The State agrees that Sergeant Clark's opinion regarding Christiansen's veracity during police questioning was clearly inadmissible and that there was no basis for laying the foundation for such testimony other than to get inadmissible evidence before the jury.

Even though the district court sustained the objection to Sergeant Clark's opinion, the jury obviously understood where the prosecuting attorney was going with his line of questioning. It was obvious that he was seeking to have Sergeant Clark testify that in his opinion Christiansen was lying during the interview. The objection to Sergeant Clark's ultimate opinion did not prevent the jury from inferring what that opinion would be. This type of tactic is prosecutorial misconduct. It is even more egregious in this case because the prosecuting attorney by a pretrial motion in limine successfully prevented Christiansen from introducing into evidence opinion testimony regarding the results of his polygraph examination. That opinion testimony was inadmissible for the same reason that the opinion testimony of Sergeant Clark was inadmissible. *State v. Perry*, 139 Idaho 520, 81 P.3d 1230 (2003). It makes no difference whether the opinion as to veracity is based upon polygraph results or upon observations of body language. In both cases it invades the province of the jury.

"Allegations of prosecutorial misconduct at trial are not among the grounds for a new trial provided by I.C. § 19-2406." *State v. Jones*, 127 Idaho 478, 481, 903 P.2d 67, 70 (1995). *Accord*, *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000). Had the district court granted Christiansen's motion to require the prosecuting attorney to establish, outside the presence of the jury, adequate foundation for any expert opinion, it may have prevented the prosecutor from engaging in the misconduct that occurred in his questioning of Sergeant Clark. However, there is nothing to indicate that the district court could or should have anticipated such misconduct. Regardless, the decision to grant or deny the motion was a discretionary ruling by the district court, *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 105 P.3d 676 (2005), not "the decision of any question of law." Therefore, the denial of the motion cannot be the ground for a new trial under Idaho Code § 19-2406(3).

Christiansen also alleges that the district court should have granted a new trial because the prosecuting attorney offered evidence that Christiansen had exercised his Fourth Amendment Right by refusing to consent to the search of his business premises. During the prosecuting attorney's questioning of Sergeant Clark, the following exchange occurred:

> Q. (By Mr. Spickler) Did you ask him for consent to search his business?
> A. I did. I told him that I believed that it would shed some light on motive. If he was financially sound, which he told me he was, then there should be documentation indicating the same, that shows that he's making money; that the business is under no financial stress. And that would shed a lot of light on motive.

9

Q. Did he give you permission?
A. No, he did not.
Q. It was his right not to give you permission?
A. Correct.

Christiansen did not object to the questioning, and so the district court was not asked to rule upon the admissibility of the testimony. Thus, this could not constitute an error by the court "in the decision of any question of law arising during the course of the trial" because the court was not asked to make any decision regarding the admissibility of that testimony. It cannot be grounds for granting a new trial under Idaho Code § 19-2406(3).

**Fundamental error.** Christiansen also argues that the testimony elicited by the prosecuting attorney regarding Christiansen's refusal to consent to a search should constitute fundamental error. In Idaho, the genesis of what became known as the doctrine of fundamental error was our opinion in *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971). In that case, the defendant took the stand at trial and presented an alibi defense. When cross-examining the defendant, the prosecuting attorney elicited from the defendant that he had not testified at his preliminary hearing where he could have told the judge of his alibi defense. Defendant's attorney did not object to that line of questioning. On appeal, this Court held that it would consider the propriety of the prosecuting attorney's conduct even though there was no objection at trial. We reasoned, "[T]he obligation of the state to see that defendant receive a fair trial is primary and fundamental. In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial." *Id.* at 251, 486 P.2 at 262 (citations omitted).

Later, in *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989), we adopted from *State v. Garcia*, 128 P.2d 459, 462 (N.M. 1942), the following definition of fundamental error:

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

At other times, we have defined fundamental error as "[a]n error that goes to the foundation or basis of a defendant's rights," *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992),

10

and "error which 'so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process,'" *State v. Sheahan*, 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) (quoting *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991)).

In *State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976), we held it constituted fundamental error for the prosecutor to elicit testimony regarding the defendant's post-arrest silence, whether his purpose was to raise an inference of guilt or to impeach the defendant's trial testimony. We relied upon *Doyle v. Ohio*, 426 U.S. 610 (1976), wherein the United States Supreme Court held that "the use for impeachment purposes of [defendants'] silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." We also relied upon *Griffin v. California*, 380 U.S. 609, 615 (1965), in which the United States Supreme Court held that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."

The same rationale that precludes evidence of an accused's assertion of his or her Fifth Amendment Rights offered for the purpose of either impeachment or inferring guilt precludes evidence of the accused's assertion of his or her Fourth Amendment rights offered for the same purposes. The State concedes that the prosecuting attorney's sole purpose for eliciting this testimony was to have the jury infer that Christiansen's refusal to consent to the search showed consciousness of guilt. The State also agrees that eliciting such testimony was improper and that the prosecuting attorney could not reasonably have believed that such evidence was admissible in this case. We hold that the prosecutor's questioning as to Christiansen's refusal to consent to the search of his business premises constituted fundamental error when the purpose for such testimony is to show consciousness of guilt.

Even though the prosecuting attorney's conduct in eliciting this testimony constituted fundamental error, such error does not automatically require reversal. *Chapman v. California*, 386 U.S. 18 (1967); *State v. Robbins*, 123 Idaho 527, 850 P.2d 176 (1993). Some constitutional errors may be deemed harmless, depending upon the circumstances of the particular case. *Id*. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). *Accord*, *State v. Robbins*, 123 Idaho 527, 850 P.2d 176 (1993). An error is harmless

11

beyond a reasonable doubt if the Court can conclude, based upon the evidence and argument presented during the trial, that the jury would have reached the same result absent the error. *State v. Sandoval-Tena*, 138 Idaho 908, 71 P.3d 1055 (2003).

After the prosecuting attorney elicited testimony that Christiansen had refused to consent to the search of his business premises, Christiansen's attorney asked to be heard outside the presence of the jury. After the jury left the courtroom, he asked for a mistrial. The district court stated that the prosecutor's question was improper, but concluded it did not deprive Christiansen of a fair trial. The court therefore denied the motion for a mistrial, but it offered Christiansen the option of instructing the jury on the matter. Christiansen declined that offer in order not to bring any more attention to it. There is nothing in the record indicating that Christiansen's assertion of his Fourth Amendment rights was ever again mentioned during the trial.

In assessing whether the errors by the prosecuting attorney were harmless beyond a reasonable doubt, we have conducted an independent review of the evidence. We have not placed any weight on the district court's denial of the motion for mistrial. Its determination that the prosecutor's conduct did not deprive Christiansen of a fair trial came during the second of five days of testimony. Without having heard all of the evidence, it would be difficult for the district court to accurately assess the impact of the prosecuting attorney's improper conduct.

There was no excuse for the prosecuting attorney seeking to elicit Sergeant Clark's opinion as to Christiansen's veracity during police interrogation or testimony that Christiansen refused consent to a search of his business premises. The prosecuting attorney's actions were clearly misconduct. Considering all of the evidence presented, however, we find that the prosecuting attorney's misconduct was harmless beyond a reasonable doubt. The evidence was uncontradicted that the fire was caused by arson and that Christiansen was the only person who had access to the premises at the time of the fire. If the evidence of Christiansen's guilt were less clear-cut, we would vacate the judgment because of the prosecuting attorney's misconduct.

### III. CONCLUSION

The judgment of the district court is affirmed.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES **CONCUR**.

12