Justice W. JONES,
concurring in part and dissenting in part.
I concur with the majority’s holding that there was sufficient evidence to support the jury’s verdict that Silk Touch breached the applicable standard of care and that such breach was the proximate cause of Krystal’s death. However, I write separately to address three issues. First, I dissent from the majority’s holding that the district court did not err in submitting the issue of recklessness to the jury. Second, I dissent from the majority’s holdings regarding costs and attorney’s fees. Third, while I agree with the majority’s finding that the district court did not abuse its discretion in permitting juror questions, I disagree with its analysis.

1. The district court erred in submitting the issue of recklessness to the jury.

I disagree with the majority’s finding that the issue of recklessness was properly submitted to the jury despite the absence of direct expert testimony specifically addressing recklessness. Idaho Code section 6-1012 requires a plaintiff alleging medical malpractice to prove, by direct expert testimony, that the defendant “negligently failed to meet the applicable standard of health care practice of the community....” I.C. § 6-1012. Direct expert testimony is required because a layperson is not qualified to reach opinions regarding most medical procedures. In fact, the fundamental rule regarding expert testimony explains that “[i]f ... specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto-in the form of an opinion or otherwise.” I.R.E. 702. It stands to reason *721 that if expert testimony is necessary to establish the standard of care to prove negligence in a medical malpractice claim, expert testimony would also, be necessary to prove recklessness—especially in cases wherein the alleged recklessness would not be obvious to a layperson,
. Here, Instruction 18 defined reckless misconduct as: “reckless actions, taken under circumstances where the actor knew or should have known not only that his actions created an unreasonable risk of harm to another, but also that his actions involved a high degree of probability that such harm would actually result.” A layperson is not likely to know what a reasonable doctor knew or should have known any more than he or she would know the applicable community standard of care for a doctor in a negligence action. Further, expecting the average juror to accurately determine whether the alleged misconduct involved a high degree of probability that such harm would actually result, all without the assistance of specific expert testimony, is wholly imprudent. Granted, expert testimony may. not be necessary where the doctor’s misconduct is “so obvious that it is within the ordinary knowledge and experience of laymen.” See Samuel v. Hepworth, Nungester & Lezamiz, Inc., 134 Idaho 84, 89, 996 P.2d 303, 308 (2000) (quoting Jarman v. Hale, 112 Idaho 270, 273, 731 P.2d 813, 816 (Ct. App. 1986)) (stating that expert testimony would be unnecessary in a legal malpractice ease wherein an attorney allowed a statute of limitations to run). However, such is not the ease here. Dr. Sorensen presented testimony that the Silk Touch was negligent in not using an enzymatic cleaner on his reusable tools, which a reasonable cosmetic surgeon may have known created a high likelihood of infection, but it is unlikely that the average juror would be able to make a determination of whether such an oversight crossed the threshold into recklessness unless an expert expressly opined on the subject.
In Jones v. Crawforth, this Court held that expert testimony was permitted because “their opinions as to the level of negligence of [the defendant doctor’s] conduct were not conclusions that the average juror would be qualified to draw” and was “precisely what the statute contemplates.” 147 Idaho 11, 17, 205 P.3d 660, 666 (2009). While the experts opined that the defendant was reckless in that-case, this Court stated that the testimony was needed for the experts’ “opinions as to the level of negligence” and it was within the district court’s discretion to admit it. Id. This Court observed that the testimony was permitted because: “(1) the experts had acquainted themselves adequately with the community standard for health care providers such as [defendant doctor], and (2) their opinions as to the level of negligence of her conduct were not conclusions that the average juror would be qualified to draw.” Id. In sum, while Jones does not purport to require expert testimony to establish recklessness in a medical malpractice case, it certainly stands for the proposition that expert testimony regarding recklessness in a medical malpractice case is allowed. Id.
The majority’s opinion focuses on the fact that a defendant only acted recklessly if he or she made a conscious choice “under circumstances where the risk and high probability of harm are objectively foreseeable.” However, risks and probabilities of harm that are “objectively foreseeable” to a medical professional may not be foreseeable to a layperson. The majority attempts to avoid this problem by asserting that:
[o]nce an expert has opined as to the applicable standard of care and how a defendant’s conduct breached that standard, in many cases a lay person [sic] could determine whether a defendant made a conscious choice to engage in such conduct and whether the risk and high probability of harm were foreseeable.
However, even if an expert explains the applicable standard of care and opines that the defendant’s conduct fell below the standard, a jury may not fully appreciate the unreasonable risk of harm and high degree of probability that such harm would actually result from the action. For example, a layperson can likely determine that it is both negligent and reckless for a surgeon to return to surgery after using the restroom without washing his hands. However, a layperson may not understand- the risk associated with that *722 same surgeon failing to wash his hands after touching his face or not washing far enough up his arm. In contrast, any qualified expert would likely find such conduct to be reckless, as it ignores basic medical school training. Further, by stating that “in many cases” expert testimony regarding negligence allows a layperson to determine whether the defendant acted recklessly, the majority necessarily recognizes that in some cases expert testimony regarding negligence is not enough. This is such a case.
The following hypothetical further illustrates my point: a patient undergoes a series of tests to determine if he has cancer. The physician reports that the patient does not have cancer. In fact, the patient does have cancer, which goes undetected and results in the patient’s death. A medical malpractice lawsuit ensues. A doctor provides expert testimony that the examining doctor negligently failed to meet the applicable standard of health care practice of the community. On what basis can a jury take one step further and determine that the examining doctor’s conduct amounted to recklessness? Certainly, expert testimony opining that the doctor’s conduct was more egregious than negligence would be required to find recklessness.
Trusting juries to determine if a defendant doctor was reckless—regardless of whether any expert opined that it was—increases the likelihood that juries will make incompetent findings regarding recklessness. That is my chief concern with the case at hand—whether the jury competently found that Silk Touch was reckless. Because evidence regarding recklessness was completely lacking, it is hard to imagine the basis upon which- the jury made its finding. The majority’s opinion will only serve to create more such claims in medical malpractice cases as plaintiffs will find it advantageous to assert a recklessness claim even if their expert is only willing to testify that the defendant’s conduct was negligent.
As an aside, it is puzzling that Dr. Soren-sen was not asked to opine whether Silk Touch’s conduct amounted to recklessness. He was asked to opine regarding negligence—why not also ask him to opine regarding recklessness? Such an opinion would certainly be admissible, as demonstrated by Jones. 147 Idaho at 17, 205 P.3d at 666. Moreover, the opinion would assist the jury, I find it impossible to believe that an opinion regarding recklessness was not proffered at trial. The only conceivable explanation is that Dr. Sorensen did not believe the conduct amounted to recklessness and therefore he refused to opine that it was. I have serious concerns about the jury’s finding of recklessness because not even a shred of evidence specifically addressing recklessness was presented at trial.

2. The district court erred in awarding attorney’s fees and costs to Charles,

As a preliminary matter, I agree with the majority that the district court abused its discretion in awarding attorney’s fees for the mistrial to Charles. However, I dissent from the majority’s procedural decision to vacate and remand the issue for further consideration. As stated by the majority, pursuant to Idaho Rule of Civil Procedure 47(u), a mistrial caused by a witness does not result in an award of reasonable expenses including attorney’s fees. Here, the district court concluded that the mistrial was caused by the misconduct of a witness. Accordingly, awarding attorney’s fees under Rule 47(u) is clearly inappropriate and the matter should simply be reversed rather than vacated and remanded,
I dissent from the majority’s finding that the district court’s award of discretionary costs under Idaho Rule of Civil Procedure 54(d)(1)(D) was appropriate, especially considering the fact that the discretionary costs awarded on this theory were spent on the mistrial. Essentially, the district court’s discretion—or lack thereof, in my opinion—permitted the award of costs associated with the mistrial, where such award would otherwise be disallowed under Idaho Rule of Civil Procedure 47(u). The award of discretionary costs contravenes the purpose of Rule 47(u) and should therefore be reversed by this Court.
I also dissent from the majority’s award of attorney fees on appeal to Charles because I would find for Silk Touch on the issue of *723 recklessness. Therefore, Silk Touch should be a prevailing party in part.

3. Silk Touch did not adequately preserve its objections to juror questions for our review.

The only reason I agree with the majority that the district court did not abuse its discretion in permitting juror questions is because Silk Touch did not adequately preserve its objections for our review. I acknowledge that juror questions are permitted under Idaho Rule of Civil Procedure 47(q), however, if juror questions are tó be allowed, procedural safeguards must be in place. The majority’s discussion of the advantages of permitting juror questions implies that the practice is universally accepted. However, that is not the case.[11] I was not present for the trial, but the transcript suggests that the entire affair resembled a three-ring circus wherein over ninety juror questions were poorly juggled. In sum, I advise that parties and judges carefully consider the pros and cons and exercise great caution in deciding whether to permit juror questions.

. There is no reason to engage in an analysis of the advantages and disadvantages of seeking juror input at trial, as commentary on the matter is readily available in law libraries and on the Internet. However, Judge N. Randy Smith, a well-respected member of the judiciary, provides valuable insight in a law review article entitled Why I Do Not Let Jurors Ask Questions in Trials. 40 Idaho L. Rev. 553, 565 (2004).