IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 43870

| STATE OF IDAHO, | ) | 2017 Opinion No. 55 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 2, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| AMANDA LUCY BELLE DIAZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Amanda Lucy Belle Diaz appeals from the judgment of conviction entered after a jury found her guilty of driving while under the influence of drugs (DUI). Diaz argues the State elicited improper testimony from two witnesses resulting in prosecutorial misconduct. Diaz further asserts this misconduct rises to the level of fundamental error. Because the testimony from the two witnesses was admissible and not improper, Diaz has not established either prosecutorial misconduct or fundamental error. Consequently, we affirm the district court's judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A police officer stopped Diaz because the officer suspected Diaz was driving under the influence of alcohol or controlled substances. A second officer arrived at the scene shortly thereafter. Diaz stepped out of her car and stated that she was taking prescription medications.

The second officer had Diaz perform field sobriety tests (FST). Diaz failed the tests. As a result, the FST officer determined Diaz was operating her motor vehicle while under the influence of some substance. The FST officer explained to Diaz that she was under arrest for suspicion of DUI, and the officer performed an alcohol breath test on Diaz. The test results did not indicate any breath alcohol. Because the FST officer suspected Diaz was under the influence of a controlled substance, he transported Diaz to the police station to complete a drug recognition evaluation (DRE). A different officer performed the DRE on Diaz. The DRE officer suspected Diaz was under the influence of drugs and asked Diaz to submit to a urinalysis test at the jail. Diaz agreed.

Diaz was handcuffed and transported from the police station to jail. On the way to the jail, Diaz became unconscious and was taken to the hospital where she was asked to provide a urine sample. Diaz voluntarily provided an initial sample, but the amount of urine was insufficient to test. Ultimately, a urine sample was obtained[1] that indicated the presence of various controlled substances in Diaz's system. The State charged Diaz with felony DUI, Idaho Code §§ 18-8004, 18-8005(6), and misdemeanor driving without privileges (DWP), I.C. § 18-8001(3).

At trial, the State called the FST officer and the DRE officer to testify. The State asked the FST officer to explain the discussion he had with Diaz regarding obtaining a fluid sample for drug testing. The officer testified that because he was a male officer he was not permitted to collect a urine sample from Diaz and no female officer was present at the police station to do so. The State then asked: "So what was the discussion--was there a further discussion with Ms. Diaz about things at that point?" The FST officer answered: "There was. There was a discussion of whether she would submit to a blood draw having Meridian Fire and Paramedics come take a blood sample from her. She did not consent to that, but she did agree to provide a [urine] sample

---

[1] The record reflects there was a forced catheterization of Diaz. Diaz filed a motion to suppress the urinalysis results from the urine obtained as a result of Diaz's forced catheterization. It is not clear whether medical staff ordered the catheterization to obtain a urine sample for healthcare diagnosis and treatment or whether law enforcement ordered the forced catheterization to obtain a urine sample for law enforcement purposes. The district court suppressed any test results obtained from the urine sample taken as a result of the forced catheterization for law enforcement purposes, finding it exceeded the scope of Diaz's consent. The court admitted the "presumptively positive" urinalysis results taken for purposes of healthcare diagnosis and treatment. Diaz does not challenge the admission of the urinalysis test results taken as part of her healthcare diagnosis and treatment.

2

at the jail."  Diaz made no contemporaneous objection to the prosecutor's question of the FST officer or his response.

Later, the State asked the DRE officer whether Diaz was impaired.  Diaz objected to the prosecutor's question of the DRE officer on the basis that the DRE officer had not been qualified as an expert.  The objection was overruled.  The State asked the DRE officer:  "Based on all the data that you gathered, going through your checklist, looking at your matrix, comparing all of that, what if any opinion would you be able to form about whether Ms. Diaz was impaired by any drugs that night?"  The DRE officer testified:

> Well, I came to the determination that she was impaired while she was operating that vehicle.  And just under the DRE status is a drug defined as any substance that when taken into the human body can impair the ability of a person who can operate a vehicle safely.  You know, I felt operating the vehicle at that time at the stop, she was impaired.  I came to the conclusion she was impaired on CNS depressants, CNS stimulants and narcotic analgesics.

The jury found Diaz guilty of felony DUI and misdemeanor DWP.  After the jury returned its verdict, Diaz admitted to two sentencing enhancements.  For the DUI, the district court imposed a unified sentence of fifteen years, with three years determinate, and retained jurisdiction.  For the DWP, Diaz was sentenced to ninety days of jail with credit for time served, to run concurrently with the DUI sentence.  Diaz timely appeals.

## II.

## STANDARD OF REVIEW

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct.  Where a defendant demonstrates that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection by defense counsel, such error shall be reviewed for harmless error in accordance with *Chapman*.[2]  Where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the State proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.  *Perry*, 150 Idaho at 221, 245 P.3d at 973.

If the alleged prosecutorial misconduct was not followed by a contemporaneous objection, fundamental error is established when the alleged error:  (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for

---

[2]     *Chapman v. California*, 386 U.S. 18 (1967).

reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

## III.

## ANALYSIS

### A. The FST Officer's Comment Regarding the Blood Draw Was Not Improper and Did Not Constitute Prosecutorial Misconduct

Diaz argues the State elicited improper testimony from the FST officer during trial, which constituted prosecutorial misconduct. Specifically, Diaz asserts prosecutorial misconduct occurred when the FST officer commented on Diaz's refusal to allow a blood draw. The comment, according to Diaz, was gratuitous and prejudicial regarding Diaz's Fourth Amendment right. The State responds that Diaz had waived her Fourth Amendment right and, in the alternative, Diaz cannot prove fundamental error.

As a threshold matter, we must address whether the alleged misconduct involved a constitutional right. Prosecutorial misconduct claims are grounded in the Fifth and Fourteenth Amendments to the United States Constitution. The Fifth Amendment provides in relevant part, "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V. The Due Process Clause of the Fourteenth Amendment applied the federal right of due process to the states and guarantees that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The clause has been interpreted to require states to ensure that criminal defendants' trials be fundamentally fair. *Schwartzmiller v. Winters*, 99 Idaho 18, 19, 576 P.2d 1052, 1053 (1978). To be regarded as fundamentally fair, a trial need not be error-free. *Id.*; *see also Bruton v. United States*, 391 U.S. 123, 135 (1968). While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Diaz asserts that when the prosecutor elicited testimony regarding her refusal to take a blood test, the prosecutor infringed on her exercise of her Fourth Amendment right, which negatively affected her rights to due process and fair proceedings. Requiring a person to submit to a blood test is a search and seizure under the Fourth Amendment to the United States Constitution and Article I § 17 of the Idaho Constitution. *State v. Wulff*, 157 Idaho 416, 418, 337

4

P.3d 575, 577 (2014). "Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion." *State v. Holton*, 132 Idaho 501, 503, 975 P.2d 789, 791 (1999).[3] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Diaz argues on appeal that the FST officer's comment that Diaz refused a blood draw but consented to the urine test constituted prosecutorial misconduct because it was a "gratuitous and prejudicial comment on Ms. Diaz's decision to exercise her Fourth Amendment rights." We disagree. Diaz waived her Fourth Amendment right when she agreed to an analysis of the controlled substances in her system. The FST officer's testimony explained the circumstances and context in which Diaz waived her Fourth Amendment right by consenting to provide a urine sample. The mechanism of testing--whether by a blood draw or a urine sample--was clarification of the way in which Diaz consented to the analysis. Diaz's consent to provide a urine sample contradicts the assertion that Diaz exercised her Fourth Amendment right. The FST officer's comment was no more prejudicial than only stating she agreed to take a urine sample.

In support of her argument for fundamental error, Diaz relies on *State v. Christiansen*, 144 Idaho 463, 163 P.3d 1175 (2007) for the proposition that it is prejudicial to comment on a defendant's exercise of her constitutional right in order to infer guilt. Diaz's reliance on *Christiansen* is misplaced. First, any test articulated in *Christiansen* for determining fundamental error was replaced by the test articulated in *Perry*. Second, the defendant in *Christiansen* refused consent to the search of his business premises. *Christiansen*, 144 Idaho at 470-71, 163 P.3d at 1182-83. There, the State conceded the sole purpose of the testimony was for the jury to infer the defendant's guilt. *Id.* at 469, 163 P.3d at 1181. In contrast, unlike *Christiansen*, Diaz waived her Fourth Amendment right when she agreed to submit to a urine test. In addition, the FST officer's testimony was not offered to infer Diaz's guilt, but rather, to

---

[3]    In this case, we focus on the United States Constitution rather than the Idaho Constitution because Diaz does not cite to the Idaho Constitution as the basis of her Fourth Amendment right.

explain the circumstances and context of the waiver of her Fourth Amendment right. As such, *Christiansen* does not control the outcome of this issue. Because there was no improper comment on Diaz's Fourth Amendment right, there was no violation of Diaz's Fifth or Fourteenth Amendment rights and thus, no prosecutorial misconduct.

**B.  The DRE Officer's Testimony Was Not Improper and Therefore, Did Not Constitute Prosecutorial Misconduct**

Diaz argues that the DRE officer offered improper testimony when he concluded that Diaz was impaired while she was operating the vehicle. Diaz further asserts the improper testimony was elicited as a result of prosecutorial misconduct that deprived Diaz of her due process right to a fair trial by a jury. The State responds that the error did not concern a constitutional right, but if it did, Diaz cannot show that the error affected the outcome of the trial proceedings.

The *Perry* fundamental error analysis does not apply where there is an evidentiary objection, as in the case of the DRE officer's testimony. The application of the *Perry* fundamental error analysis is only triggered when there is an error that is not followed by a contemporaneous objection. Diaz's attorney raised an evidentiary foundational objection to the DRE officer's qualifications. It is not unobjected to error when a party articulates a specific basis to exclude evidence, receives a ruling, and then fails to offer a different basis on which to exclude the evidence. Thus, this is not a case where trial counsel failed to object; instead, this is a case where trial counsel failed to provide an adequate basis upon which the evidence could be excluded. As such, the district court's evidentiary ruling would be subject to a harmless error analysis, which is not addressed by Diaz in her briefing. Typically, failure to argue an issue on appeal precludes our review of the issue. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

As to the claim that the State engaged in prosecutorial misconduct when eliciting the DRE officer's testimony, Diaz does not establish a claim of fundamental error. First, as noted above, there was an objection made; as such, there was no unobjected to violation of a constitutional right. Attempting to transform actual evidentiary objections into claims of unobjected to error is an incorrect application of *Perry*. The *Perry* opinion defined fundamental error as, "[e]rror [that] goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *Perry*, 150 Idaho at 226, 245 P.3d at

6

978. Trial counsel's inadequate evidentiary objection did not rise to this level and even if it did, it is more appropriately dealt with in post-conviction proceedings. In cases of unobjected to error, the "appellate court's authority to remedy that error is strictly circumscribed to cases where the error results in the defendant being deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal." *Id.* at 224, 245 P.3d at 976. A substantial right of the defendant is not infringed upon just because his or her trial counsel fails to make an appropriate evidentiary objection. In fact, where "the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, we hold that the 'fundamental error' doctrine is not invoked." *Id.* at 226, 245 P.3d at 978.

Nonetheless, there was no error in admitting the testimony of the DRE officer. Idaho Rule of Evidence 702 governs the admissibility of expert testimony and provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." It is a prosecutor's duty to see that a defendant has a fair trial, and that nothing but competent evidence is submitted to the jury. *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903). Prosecutors should never seek to warp the minds of the juror by inferences or insinuations. *Id.* It is inappropriate for a prosecutor to ask questions that are calculated to prejudice the jury. *Id.* Prosecutorial misconduct occurs when a prosecutor uses tactics to elicit testimony the court has already ruled inadmissible. *Christiansen*, 144 Idaho at 469, 163 P.3d at 1181; *State v. Martinez*, 136 Idaho 521, 525, 37 P.3d 18, 22 (Ct. App. 2001).

To be admissible under I.R.E. 702, the expert's testimony must assist the trier of fact to understand the evidence or to determine a fact that is in issue. *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003). An expert's opinion is not inadmissible because it embraces an ultimate issue to be decided by the trier of fact. I.R.E. 704. Expert testimony that concerns conclusions or opinions that the average juror is qualified to draw from the facts utilizing the juror's common sense and normal experience is inadmissible. *Jones v. Crawforth*, 147 Idaho 11, 17, 205 P.3d 660, 666 (2009).

We are cognizant of the opinion in *State v. Ellington*, 151 Idaho 53, 67, 253 P.3d 727, 741 (2011) holding, in part, that an officer's "gratuitous and prejudicial response is imputed to the State, whether or not the State intended to elicit that response." In this case however, the

prosecutor did not attempt to elicit improper testimony or use unfair tactics and the DRE officer's answer was neither gratuitous nor prejudicial. It was not gratuitous because it was in response to a direct question by the State. It was not prejudicial because the answer to this question was admissible.

A similar issue was addressed in *State v. Corwin*, 147 Idaho 893, 896-97 216 P.3d 651, 654-55 (Ct. App. 2009). There, two officers arrived at the scene of an automobile accident in which Corwin was the alleged driver and the officers found no one in the vehicle. *Id.* at 895, 216 P.3d at 653. After Corwin was located, an officer administered the horizontal gaze nystagmus test which Corwin failed. At the subsequent trial, the officer testified that Corwin was too impaired to operate a motor vehicle. Following his conviction, Corwin appealed, arguing that it was error to admit the testimony of the officer on the ultimate issue for the jury to determine: whether or not Corwin was under the influence of alcohol. *Id.* This Court held that:

> The officers' observations that Corwin was under the influence of alcohol and too impaired to drive went to an ultimate issue of fact, but did not invade the province of the jury as to its determination of whether Corwin was or was not guilty of having driven an automobile while under the influence of alcohol.[4]

*Id.* at 896, 216 P.3d at 654.

In this case, the DRE officer testified about the twelve-step process he used to conduct investigations where the driver is allegedly impaired by drugs. He testified he used a checklist with seven different drug categories. For each drug category, there were nine different indicators. The DRE officer considered the result of the breath alcohol test, talked with the arresting officer, questioned Diaz, and then analyzed each of the nine indicators. These factors included an evaluation of Diaz's pulse, pupil size, gaze nystagmus, ability to perform the divided attention tests, vital signs, and blood pressure. It also included three eye evaluations, a visual exam of Diaz's nostrils and mouth to detect foreign substances, a muscle tone check, and a visual exam for injection sites. The DRE officer then questioned Diaz about what substances--legal or illegal--that could affect the evaluation and whether Diaz had eaten. The officer testified he evaluated the way in which Diaz responded to the questions and tasks put to her. The DRE officer testified that the drug recognition evaluation is extensive because different drugs affect people differently and that a person ingesting more than one drug in the same time-period could

---

[4] Because Corwin was not charged with a "per se" violation of the DUI statute, the ultimate issue, and the context of the officer's testimony, was that Corwin was too impaired to operate a motor vehicle at the time of the accident.

experience different symptoms. During the drug recognition evaluation, Diaz admitted that within approximately twenty-four hours prior to the stop she had taken Oxycodone and Adderall. Diaz also admitted that she had been prescribed Zoloft, Navene, and Elavil, although she had not taken any on the day of the stop. Finally, the DRE officer testified that Diaz indicated she had been released from the hospital approximately three days before the stop, at which time she was given Dilaudid.

Following the DRE officer's testimony about the drug recognition methods, the State asked the DRE officer whether Diaz was impaired by drugs the night she was stopped. Diaz objected to the prosecutor's question on the basis that the DRE officer had not been qualified as an expert. The objection was overruled. The State then asked the DRE officer: "Based on all the data that you gathered, going through your checklist, looking at your matrix, comparing all of that, what if any opinion would you be able to form about whether Ms. Diaz was impaired by any drugs that night?" The officer testified: "Well, I came to the determination that she was impaired while she was operating that vehicle."

Diaz contends the DRE officer's testimony was inadmissible because it answered a question reserved for the jury, and one which the jury could have determined through common sense and normal experience. *State v. Ellington*, 151 Idaho 53, 66, 253 P.3d 727, 740 (2011). First, Diaz did not object at trial on this ground--that the DRE officer was testifying as to the ultimate fact in issue--which would normally preclude consideration of this issue on appeal. *State v. Jackson*, 151 Idaho 376, 378, 256 P.3d 784, 786 (Ct. App. 2011). However, even if Diaz had objected to the evidence on the ground that the response addressed the ultimate issue, the question was permissible and the answer was properly admitted.

In *Ellington*, the question for the jury was whether Ellington acted intentionally. *Ellington*, 151 Idaho at 66, 253 P.3d at 740. The Supreme Court held that because the jury heard un-contradicted evidence from an accident-reconstruction expert that Ellington had control of his vehicle and made no evasive maneuvers, the jury was as capable as the expert of determining whether the act was intentional or accidental. *Id.* Additionally in *Ellington*, the expert not only provided information about the events in question, but repeatedly issued his opinion that the defendant acted intentionally and his actions were not accidental. *Id.* at 66-67, 253 P.3d at 740-41. The Supreme Court held that the expert's testimony that there was "not an accident" was inadmissible because the jury could determine whether Ellington acted intentionally from the

9

evidence presented; thus, there was no need for an expert to opine on the issue. *Id.* at 67, 253 P.3d at 741.

Here, the issue was whether Diaz was impaired at the time she was in actual, physical control of a motor vehicle. The evidence on that issue was less conclusive than the evidence on intentionality in *Ellington*. For example, Diaz's urinalysis test results indicate a "presumptive positive" for several different controlled substances. Diaz argued the hospital lab test results were not conclusive for controlled substances because the test results were only "presumptive positive" and did not establish the level of those substances in her system or the extent, if any, of her impairment. Diaz further supported that argument by arguing hospital testing methods did not have the same reliability as those tested by approved laboratories. Diaz additionally challenged the DRE results as being within normal ranges and not indicative of impairment. Thus, there was no conclusive evidence of impairment in this case like the evidence of intentionality in *Ellington*. For the jury to understand how the substances in Diaz's system could cause impairment at the time she was driving, expert testimony was necessary. The State asked the DRE officer to synthesize the extensive data he gathered on the night of the arrest, overlay the DRE checklist upon that data, and reach a conclusion from that information. We are not convinced the jurors could reach a similar conclusion by an exercise of common sense or normal experience, given the evidence in the case.[5] Therefore, the State's questioning did not constitute prosecutorial misconduct.

Additionally, unlike the testimony at issue in *Ellington*, the DRE officer's testimony was not offered gratuitously or repeatedly. Instead, the DRE officer answered the question he was asked; i.e. a question whether Diaz was impaired which anticipated a legally admissible response. The answer was a recitation of the DRE officer's opinion based on his observations of Diaz and his training and experience. The parties have not alleged that the DRE officer could not testify about the time frame in which Diaz was impaired. In DUI cases based on ingestion of controlled substances, it seems too fine a distinction to permit testimony that an individual is

---

[5]    Unlike DUI cases based on alcohol consumption for which there is a "per se" legal limit for blood alcohol concentration, in DUI cases based on ingestion of controlled substances, no such "per se" limit exists. The DRE officer's testimony highlights the difficulty of determining whether a person who has previously ingested a controlled substance is under the influence of those substances while in actual, physical control of a motor vehicle, an element of the offense in non-"per se" DUI cases.

impaired during a particular time frame or too impaired to drive but to exclude testimony that the defendant was impaired while driving.[6] Therefore, unlike the testimony in *Ellington*, the DRE officer's testimony in this case was not improper and did not constitute error that should be attributed to the prosecutor.

The State did not elicit inadmissible testimony in this case, and there was no error that could be attributed to the prosecutor. Since there was no error, there was no misconduct. Because there was no other alleged constitutional violation and we cannot find any prosecutorial error, Diaz has not established a claim that one of her unwaived constitutional rights was violated. Having failed to establish the first prong of the *Perry* analysis, there is no fundamental error in this case.

## IV.
## CONCLUSION

Because the testimony from the FST officer and the DRE officer was admissible and no error can be attributed to the prosecutor, Diaz has not established prosecutorial misconduct or fundamental error in this case. We therefore affirm the district court's judgment of conviction.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

---

[6] This semantic dance becomes a distinction without a difference, particularly when the DRE officer could have testified that: 1) Diaz was impaired by the controlled substances she ingested; 2) that the impairment existed during a defined time period; and 3) that Diaz had been stopped for erratic driving during that time-period. In both contexts, the same testimony is presented to the jury: that Diaz was impaired while in actual, physical control of a motor vehicle.